UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELIAS CATANO, | ) | 1:04-CV-06395 LJO DLB HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| D. ADAMS, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, following his conviction by jury trial of assault with intent to rape and attempted sexual battery. See Cal. Penal Code §§ 220, 664/243.5. On January 22, 2002, Petitioner was sentenced to serve a term of eight years. See Petition at 2.

Petitioner appealed his conviction to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). On April 16, 2004, the Fifth DCA affirmed the conviction. See Lodged

Doc. No. 4.[1] Petitioner then filed a petition for review in the California Supreme Court on May 26, 2004. See Lodged Doc. No. 5. The petition was summarily denied on June 30, 2004. See Lodged Doc. No. 6.

On October 12, 2004, Petitioner filed the instant petition for writ of habeas corpus in this Court. Petitioner raises one claim for relief: He argues there was insufficient evidence to support the intent element of his conviction for assault with intent to commit rape, in violation of his federal due process rights. Respondent filed an answer on March 2, 2005. Petitioner filed a traverse on May 6, 2005.

**FACTUAL BACKGROUND**[2]

On April 18, 2002, Petitioner came to the victim's home looking for her husband. The victim testified that Petitioner made her uncomfortable by talking about how pretty she was and by coming close to her. Petitioner followed the victim into her apartment and sat on her couch, asking her to sit next to him. The victim testified that when she refused, he got up, grabbed her arm, and pushed her onto the couch next to him. He climbed on top of her, forced her arms to her sides and held her shoulder down with his chin. He then tried to unbutton her pants with one hand, rubbed her breasts over clothing and rubbed his "private area" on her leg. The victim attempted to keep her legs together, and Petitioner quickly got off her and walked away. The victim then picked up her sleeping children and left the apartment.

Petitioner testified in his own defense. He contended the victim made the story up to hide the fact she had smoked methamphetamine with him while her husband was not home. He testified that the victim invited him into her apartment and he denied having any physical contact with the victim or being "interested" in the victim. He stated the victim's husband called while Petitioner was there, and the victim "looked kind of paranoid" and took her children and left the apartment. See Lodged Doc. No. 4.

---

[1] "Lodged Doc." refers to the documents lodged by Respondent with his response.

[2] The Court hereby adopts the factual summary of the case as set forth by the 5th DCA in its unpublished opinion of April 16, 2004.

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

1. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

1  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

2  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

3  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claim**

In his sole ground for relief, Petitioner asserts that there was insufficient evidence to support the intent element of his conviction for assault with intent to commit rape.

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979). See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992).  Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

Sufficiency claims are judged by the elements defined by state law.  Jackson, 443 U.S. at 324 n. 16. This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539, 597 (1981).

This claim was presented on direct appeal to the Fifth DCA and rejected in a reasoned opinion. See Lodged Doc. No. 4.  The claim was then presented to the California Supreme Court in the petition for review and it was summarily denied on June 30, 2004. See Lodged Docs. Nos. 5, 6.

The 5th DCA analyzed the claim as follows:

> The specific intent element of assault with the intent to commit rape is satisfied when a defendant sets out to "use whatever force is required to complete the sexual act against the will of the victim." (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1146, disapproved on

another ground in *People v. Rayford* (1994) 9 Cal.4th 1, 21.) "Assault with intent to commit forcible rape requires an intent to and an unlawful attempt to have sexual intercourse by force, violence or fear of bodily injury, without consent of the victim. [Citations.] The only intent required for the crime of rape itself is the intent to do the proscribed act." (*People v. Dixon* (1999) 75 Cal.App.4th 935, 942-43.) "In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken. 'The question whether the intent existed is one for the jury to determine from the conduct of the defendant and the surrounding circumstances.' [Citations.]" (*People v. Bradley, supra*, 15 Cal.App.4th at p. 1155.)

In *People v. Craig* (1994) 25 Cal.App.4th 1593 (*Craig*), this court found sufficient evidence of intent to rape in a case with facts even less compelling than those presented here. The defendant, Craig, followed the victim as she drove home and then told her he had mistaken her for someone else. He then confronted the victim, pushed her onto the driver's seat, placed his hand under the victim's sweater, and "touch[ed] both of her breasts outside her bra." (*Id*. at p. 1596.) The attack was then interrupted.

Like appellant does in this case, defendant Craig relied on *Greene* to argue insufficient evidence supported the intent element of the crime. We disagreed, and easily distinguished *Greene*. The *Greene* court found the evidence insufficient to support an inference of intent to rape where the defendant told the victim he was only going to "play" with her and that his other physical action toward her was approaching the victim and moving his hand "up and down her waistline." (*Greene, supra,* 34 Cal.App.3d at p. 650.) In contrast, this court noted in *Craig* that the defendant "made no statements suggesting that his intent was to commit rape or that it was not." (*Craig, supra*, 25 Cal.App.4th at p. 1599.) Further, the *Craig* court emphasized the stronger evidence of physical acts than were presented in *Greene*, where the defendant had placed "his arm around the victim's waist and mov[ed] his hand around her waistline, all of which was consistent with his declaration that he only wanted to 'play' with her." (*Craig, supra*, 25 Cal.App.4th at p. 1600.) In addition, we noted several cases finding "sufficient evidence to support a conviction for assault with intent to commit rape when a man assaulted a woman without attempting to steal money or property from her." (*Id*. at p. 1602.)

The *Craig* court concluded:

> We believe from the entire mélange of circumstances shown by the evidence, a reasonable trier of fact could infer that appellant assaulted [the victim] with the specific intent of committing rape. All of his conduct was consistent with that intent. Nothing he did or said indicated that he intended only to placed his hands on her body or to accomplish some sexual act short of or different from intercourse. While other reasonable inferences also might be drawn, it was for the jury, not us, to draw them." (*Id*. at p. 1604.)

We reach a similar conclusion here. Appellant followed the victim into her apartment and forced her onto the couch. He held her down, tried to unbutton her pants, touched her breasts and rubbed his "private area" against her. The jury could reasonably have concluded that appellant intended to rape the victim. Appellant's attempt to unbutton the victim's pants while rubbing against her reasonably supports an inference of intent to rape. Further, "[n]othing he did or said indicated that he intended only to place his hands on her body or to accomplish some sexual act short of or different from intercourse" (*Craig, supra*, 25 Cal.App.4th at p. 1604). That appellant - for whatever reason - got off of the victim prior to completing a rape does not sufficiently change the state of the evidence to render the inference drawn by the jury unsupported.

See Lodged Doc. No. 4 at pp. 3-4.

In light of the above, it cannot be said that the state court resolution of this claim was unreasonable. The appellate court correctly set forth the elements of state law. The appellate court found that based on the facts the jury could reasonably find Petitioner intended to rape the victim. This Court must presume the correctness of the state court finding. Petitioner fails to overcome the presumption. Clearly, a jury could reasonably infer Petitioner intended to rape the victim based on his acts of forcing her onto the couch, pinning her down, attempting to unbutton her pants, rubbing her breasts, and rubbing his "private area" against her while she struggled to resist him. The state court denial of this claim was not contrary to or an unreasonable application of controlling Supreme Court authority, and the claim should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 3, 2007**        /s/ **Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE